UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JESSE D. WEST,

                          Plaintiff,

v.                                                      9:17-CV-0621
                                                        (GTS/DJS)
JOHN HARKNESS, #0304, Police Officer; and
JOHN HARRIMAN, #0463, Police Officer,

                          Defendants.
_____

APPEARANCES:                              OF COUNSEL:

OFFICE OF JARROD W. SMITH                 JARROD W. SMITH, ESQ.
  Counsel for Plaintiff
11 South Main Street
P.O. Box 173
Jordan, NY 13080

CITY OF SYRACUSE LAW DEPARTMENT           PATRICK R. BLOOD, ESQ.
  Counsel for Defendants                  TODD M. LONG, ESQ.
233 East Washington Street
300 City Hall
Syracuse, NY 13202

GOLDBERG SEGALLA                          SHANNON T. O'CONNOR, ESQ.
  Co-Counsel for Defendants               ALEXANDER J. BLOOD, ESQ.
5786 Widewaters Parkway
Syracuse, NY 13214

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Jesse D. West ("Plaintiff")

against City of Syracuse police officers John Harkness and John Harriman ("Defendants"), is

Defendants' motion for summary judgment. (Dkt. No. 59.) For the reasons set forth below,

Defendants' motion is denied.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Amended Complaint

Generally, in his Amended Complaint, Plaintiff asserts a claim of "excessive force" and a claim of failure to protect in violation of the Fourth Amendment and 42 U.S.C. § 1983.  (Dkt. No. 8 [Pl.'s Am. Compl.].)  Specifically, Plaintiff alleges that, on February 24, 2017, while he was in a police vehicle, Defendants Harkness and Harriman, while conducting a search, pulled down his jeans and boxer briefs and one of them ran a hand between his buttocks, touching his "rectum" barehanded.  (*Id.*)  Plaintiff additionally alleges that Defendants failed to protect him from the alleged use of excessive force.  (*Id.* at 5.)

### B.    Undisputed Material Facts on Defendants' Motion for Summary Judgment

Under N.D.N.Y. Local Rule 56.1, a party opposing summary judgment must file a response to the moving party's Statement of Material Facts that "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs," supported by "a specific citation to the record where the factual issue arises."  N.D.N.Y. L.R. 56.1(b).  This requirement is not a mere formality; rather "this and other local rules governing summary judgment are essential tools intended to relieve the district court of the onerous task of hunting through voluminous records without guidance from the parties."  *LaFever v. Clarke*, 17-CV-1206, 2021 WL 921688, at *6 (N.D.N.Y. Mar. 11, 2021) (Hurd, J.) (quoting *Frantti v. New York*, 414 F. Supp. 3d 257, 284 [N.D.N.Y. 2019] [Hurd, J.]).  Indeed, "[a] proper response to a movant's statement of material facts streamlines the summary judgment analysis 'by allocating responsibility for flagging genuine factual disputes on the participants ostensibly in the best position to do so: the litigants themselves.'"  *LaFever*, 2021 WL 921688, at *7 (quoting *Alke v.*

*Adams*, 16-CV-0845, 2018 WL 5297809, at *2 [N.D.N.Y. Oct. 25, 2018] [Hurd, J.]).  "The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  *See* L.R. 56.1(b).

In this case, Plaintiff failed to comply with the Local Rules in that his purported "response" to Defendants' Statement of Material Facts does not mirror Defendants' Statement of Material Facts and does not admit or deny the asserted facts in matching numbered paragraphs supported by specific citations in the record.  Rather, Plaintiff's purported response is a mishmash of legal arguments and citations to various portions of his testimony at depositions and other evidence, without any reference to the specifically numbered facts asserted by Defendants.  (Dkt. No. 122, Attach. 20.)  Furthermore, although the Local Rules permit a respondent to "set forth any assertions that the opposing party contends are in dispute in a short and concise Statement of Additional Material Facts in Dispute," Plaintiff's statement here is also insufficient pursuant to those standards.  Specifically, many of Plaintiff's "facts" are legal arguments with generic citations to exhibits (or no citation at all), while his specific citations to evidence from the deposition testimony are neither "short and concise" nor in "separately numbered paragraphs" as required.  L.R. 56.1(b).  Indeed, Plaintiff's "response" is nearly identical to his affidavit also submitted with his opposition to Defendants' motion.  (*Compare* Dkt. No. 122 *with* Dkt. No. 122, Attach. 20.)

The Court has ensured that all of Defendants' asserted facts are supported by the record evidence cited in support of them.  In addition, the Court has made a reasonable effort to ensure that Defendants' asserted facts do not conflict with other record evidence cited in support of contrary facts asserted by Plaintiff.  However, the Court has not *sua sponte* scoured the

considerable record[1] for any and all evidence contradicting those asserted facts, nor does it have a duty to do so.  *See Prive v. Johnson*, 04-CV-1024, 2010 WL 3338810, at *2 (N.D.N.Y. Aug. 23, 2010) (Suddaby, J.) (noting that, "[b]ased on the volume of record evidence presented in this case, and the fact that Plaintiff was represented by experienced counsel when he filed his response to Defendants' motion, the Court declines to scour the record for evidence of material questions of fact"); *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."); *Monahan v. New York City Dep't of Corr*., 214 F.3d 275, 291 (2d Cir.2000) (noting that the Local Rules require the parties "to clarify the elements of the substantive law which remain at issue because they turn on contested facts" and the Court "is not required to consider what the parties fail to point out") (internal quotation marks and citations omitted).

Indeed, given the failure of Plaintiff (who is represented by counsel) to respond appropriately to Defendants' Statement of Material Facts, the Court may and does deem admitted any asserted facts that Defendants have supported with evidence that are not specifically controverted.  *See* N.D.N.Y. L.R. 56.1(b); *Bryant v. Whitmore*, 14-CV-1042, 2016 WL 7188127, at *3 (N.D.N.Y. Nov. 4, 2016) (Dancks, M.J.) ("Where a party has failed to respond to the movant's statement of material facts in the manner required by L.R. [56.1], the facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant, if proceeding *pro se*, has been specifically advised of the possible consequences of failing to respond to the motion.") report-recommendation adopted by 2016 WL 7187349 (N.D.N.Y. Dec. 9, 2016) (McAvoy, J.).  As a

---

[1]      The Court notes that the record on Defendants' motion is approximately 680 pages in length.  (Dkt. No. 117, Attach. 2-13; Dkt. No. 122, Attach. 1-18.)

result, unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendants in their Statement of Material Facts and deemed admitted by Plaintiff due to his failure to appropriately respond or cite evidentiary support sufficient to create a genuine dispute of material fact.  (*Compare* Dkt. No. 117, Attach. 14 [Defs.' Rule 56.1 Statement] *with* Dkt. No. 122, Attach. 20.)[2]

### Events Prior to Plaintiff's Arrest

1.      On February 23, 2017, Syracuse Police Department ("SPD") Officer Cody Nellis responded to 217 Aberdeen Terrace in Syracuse, New York, regarding a verbal domestic incident.  Upon arrival, Officer Nellis spoke to S.V., who reported that she has "a full stay away order" against Plaintiff, her ex-boyfriend.

2.      S.V. explained that Plaintiff had been calling her continuously for the past 24 hours, and she showed Officer Nellis her cell phone, which showed more than 40 unanswered calls from a landline phone number listed as 1313 Grant Boulevard in Syracuse, New York.

3.      S.V. reported to Officer Nellis that Plaintiff had been physically violent with her in the past (with numerous physical altercations dating back several years) and that she finally had had enough of the abuse, so she had ended the relationship approximately a month before. S.V. additionally reported that, after she had left Plaintiff, he had started using drugs frequently and had become increasingly hostile towards her.

4.      S.V. advised Officer Nellis that she had answered one of these phone calls from Plaintiff in an attempt to direct him to stop calling her. She reported that, during the call,

---

[2]      Given the flagrant lack of compliance with Local Rule 56.1 in this case, Plaintiff's counsel is respectfully reminded that familiarity and compliance with the Local Rules is a prerequisite to practice in this District.  *See* N.D.N.Y. L.R. 83.1(a)(1) (indicating that, in a petition for admission to the bar of this Court, the petitioner must state that he or she is familiar with the Local Rules and "shall further affirm faithful adherence to these Rules and responsibilities").

Plaintiff had claimed that he had recently came into possession of a handgun from his cousin and that he was going to kill her, their child, and the police when they came for him, because he had "nothing else to live for" and was adamant about "going out with a bang."  S.V. expressed that she believed Plaintiff was "very unstable" and that his threats were sincere.

5.      Officer Nellis obtained a sworn statement from S.V. regarding Plaintiff and her desire for prosecution against him.

6.      Officer Nellis learned from S.V. that Plaintiff had been staying with family members at 1313 Grant Boulevard in Syracuse, New York,

7.      After speaking with S.V., Officer Nellis prepared a warrant application for Plaintiff's arrest based on evidence that he had violated a protective order.  As a part of this process, SPD issued notice to the Onondaga County 911 Center to flag any potential calls in connection with Plaintiff.

### SPD's Response to Report of Suspicious Person with a Weapon

8.      The following day, February 24, 2017, at or around 5:06 PM, Officer Nellis and multiple other SPD units responded to 1313 Grant Boulevard regarding a call from S.V.

9.      S.V. had reported to 911 that Plaintiff was standing outside 1313 Grant Boulevard with a gun and threatening to shoot everyone.  S.V. had also reported that Plaintiff was on "molly," had threatened to come "mess up her van," and that her friend had seen Plaintiff display a gun, which he had pointed at that friend.

10.     Around the time Officer Nellis arrived at 1313 Grant Boulevard, he was joined by SPD Officer Michael Shannon, Sergeant David Hart, and Defendant Harriman.  After establishing a perimeter around the residence, the officers approached the front door and ordered the occupants to exit.

11.     Three individuals exited the residence, including Plaintiff's father, who gave the officers permission to enter the residence.

12.     Officers Nellis and Shannon entered the residence and began clearing rooms.  As Officer Nellis entered the kitchen area, he observed a closed door in the rear of the kitchen. When he attempted to open the door, it appeared to be held shut from the other side.

13.     Officer Nellis called for assistance and was joined by Officer Shannon and Sergeant Hart, all three of whom drew their SPD-issued weapons (due to the nature of the call indicating that a weapon might be involved) and ordered the individual inside to exit with his hands in the air.  When Plaintiff came out from the room, he was placed under arrest, handcuffed, and escorted outside.

14.     Outside of the residence, as the officers attempted to place Plaintiff into the back of Defendant Harriman's patrol vehicle, he began to push or "buck" the officers, and also attempted to kick Defendant Harriman.  Plaintiff was eventually brought to the ground by officers.

15.     Plaintiff was, in his own words, "struggling to get free" because he was in pain.

16.     By the time Plaintiff was under control, an SPD prisoner transport van had arrived on scene.  The prisoner transfer van is larger than a patrol car and therefore is much easier to place individuals inside.

17.     Defendants Harkness and Harriman escorted Plaintiff to the back of the prisoner transport van.

18.     Before Defendants Harkness and Harriman brought him to the transport van, officers had been unable to thoroughly search Plaintiff beyond a pat-frisk.

**Defendants' Search of Plaintiff**

19.     SPD's operations policy titled "Arrest, Processing & Transporting Prisoners" (Art. III, Sec. 9.17) requires that "[a]ll persons taken into custody will be thoroughly searched for weapons, evidence, means of escape, and/or contraband prior to being transported."

20.     In Defendant Harriman's and Officer Nellis' estimation, "[i]t is not uncommon for suspects to hide weapons (e.g., handguns, knives or sharp objects) or contraband in or near the waistband of their pants and/or underwear."

21.      A mere "pat down" or "pat-frisk" search may be unable to detect such items; thus, before transport, a more thorough search is required, especially where the individual has exhibited violent behavior and/or is suspected of having weapons.

22.     Before the arrival of the prisoner transport van, Plaintiff had not been searched thoroughly.

23.      The prisoner transport van is divided roughly in two sections: the front section for the driver and front seat passenger, and the rear section for the prisoners.  The rear (or prisoner) section is at least ten feet long with two parallel benches running lengthwise.  A metal grate wall separates the driver-and-front passenger section from the prisoner section.

24.     Initially, Plaintiff was positioned sitting at the edge of the rear section of the prisoner transport van with the doors open.

25.     While still outside the van near the rear doors, Defendant Harriman communicated that Plaintiff had not been searched thoroughly and that he would need to be searched again before transport.[3]

---

[3]     In his deposition, Plaintiff testified that he did not hear any officer say they were going to search him.  (Dkt. No. 117, Attach. 2, at 83-84 [Pl.'s Dep.].)  However, he does not deny that Defendant Harriman made the asserted statement, merely that he did not hear it.  Such evidence is insufficient to create a genuine dispute of material fact.  *See Genger v. Genger*, 663 F. App'x 44, 49 n.4 (2d Cir. 2016) (summary order) (noting that a statement that one "ha[d] no recollection" of a fact "does not constitute a denial"); *F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 205 F.3d 66, 75 (2d Cir. 2000) ("[V]ague denials and memory lapses . . . do not

26.     Upon seeing Defendants coming for him, Plaintiff stated words to the effect of "That's not going to happen," and he "slid" into the prisoner transport van away from the rear doors and towards the partition between the driver section and the prisoner section.[4]

27.     Plaintiff leaned himself against the metal wall by the front of the van away from Defendants.

28.     Accordingly, Defendant Harkness entered the van and began to explain to Plaintiff that he needed to be searched.

29.     Plaintiff then stood and charged toward Defendant Harkness.[5]

30.     Defendant Harkness used one of his forearms to deflect Plaintiff and push him towards the front of the van into a seated position on the bench.

31.     Plaintiff then reached into the rear of his jeans.[6]

---

create genuine issues of material fact."); *Davis v. City of Syracuse*, 12-CV-0276, 2015 WL 1413362, at *2 (N.D.N.Y. Mar. 27, 2015) (Suddaby, J.) ("On a motion for summary judgment, denials of fact that are based on a lack of personal knowledge . . . are insufficient to create a genuine dispute.").

[4]     In his deposition, Plaintiff states that he does not recall saying anything to the officers or expressing any verbal objection, but he does not affirmatively deny that he expressed a verbal objection.  (Dkt. No. 117, Attach. 2, at 84 [Pl.'s Dep.].)  As indicated above in note 3 of this Decision and Order, such a denial of recollection is insufficient to controvert a factual assertion.  Additionally, at his previous examination (pursuant to Section 50-h of the N.Y. General Municipal Law), Plaintiff testified that, when they sat him at the edge of the transport van, the officers spoke to him, at which point he stated, "I don't have nothing," before he slid into the wagon.  (Dkt. No. 122, Attach. 3, at 54, 58-59 [Pl.'s 50-h Exam.].)  As a result, the Court deems this portion of Defendants' asserted fact to be admitted and undisputed.

[5]     Although Plaintiff does not affirm that this occurred, he offers no testimony or evidence to specifically refute the asserted fact.  This asserted fact is therefore deemed admitted.

[6]     Plaintiff testified at his Section 50-h examination that (1) he never reached toward the "waistband" of his pants while in the back of the van, and (2) his hands were never near the waistband of his pants because they were "cuffed behind [his] back."  (Dkt. No. 122, Attach. 3, at 60 [Pl.'s 50-h Exam.].)  However, Defendants have asserted that Plaintiff reached into the rear of his "jeans," not the rear of his "waistband."  Moreover, Plaintiff's explanation for why he could not have reached near the waistband of his pants is self-contradictory, because he could have done so even if his hands were handcuffed behind him.  For both of these reasons, the

32.     Upon seeing the struggle, Defendant Harriman climbed into the van to assist Defendant Harkness.

33.     As Plaintiff began kicking, Defendant Harriman directed his attention to controlling Plaintiff's legs.  While doing so, Defendant Harriman observed Plaintiff quickly reaching toward the back of his waist with his left hand.

34.     Defendant Harriman yelled at Plaintiff, "[S]top reaching!"

35.     Defendants Harriman and Harkness believed that Plaintiff was reaching for a weapon based on reports regarding Plaintiff and the fact that he had not been searched thoroughly by that time.

36.     Defendant Harkness undid Plaintiff's belt and pulled his pants down while Defendant Harriman checked the interior of Plaintiff's pants and pockets.  That search yielded negative results.

37.     In Defendant Harriman's experience, the waistband is a common spot utilized by criminals to carry and conceal weapons, and it is common for weapons to become dislodged from the waistband and fall inside the pants, particularly during or after fleeing from or resisting police officers.

38.     After checking Plaintiff's pants and pockets, Defendant Harriman directed his attention to the waistband of Plaintiff's boxer briefs.  Defendant Harriman then ran his right hand along Plaintiff's waistband to confirm whether he was concealing anything inside his boxer briefs.  This search yielded negative results.[7]

_____

Court finds that Plaintiff has not controverted the above-stated fact by Defendants.

[7]     The Court notes that, at this point of their recitation of the facts, Defendants assert that at no time during this search of Plaintiff's waistband did Defendant Harriman with his barehand make "skin-to-skin" contact with Plaintiff's buttocks area, and that indeed Defendant Harriman would never do such a thing out of concerns for safety and hygiene.  (Dkt. No. 117, Attach. 10, at ¶¶ 46-47.)  Granted, Defendants' factual assertion is supported by an accurate record citation. (Dkt. No. 117, Attach. 10, at ¶ 15 [Harriman Decl.].)  However, during its general review of the

39.     During the time Plaintiff's pants were down, he was at in the far "back" of the van, at its front wall away from the rear doors.  Based on his position, and the fact that Defendants were standing between Plaintiff and the doors, it would have been extremely difficult for any bystander on the street to see him with his pants down.

40.     Throughout the search, Plaintiff repeatedly attempted to press the left side of his waist against the front wall, preventing Defendant Harriman from searching him without difficulty.

41.     Article III, Section 9.17 of the Syracuse Police Department's operations policy requires that "[a]ll persons taken into custody will be thoroughly searched for weapons, evidence, means of escape, and/or contraband prior to being transported."

42.     As Defendant Harriman started to follow Defendant Harkness out of the van, Plaintiff again lunged at him and attempted to headbutt him.  In response, Defendant Harriman pushed his right forearm towards Plaintiff to deflect the blow.

43.     Defendant Harriman then removed his pepper spray, pointed it at Plaintiff, and informed Plaintiff that he would be sprayed if he did not sit down.  Plaintiff obeyed this command and Defendant Harriman exited the van without further incident.

44.     Plaintiff was charged with Resisting Arrest and Harassment in the Second Degree with regard to his conduct on February 24, 2017.  He was also charged with Aggravated Harassment in the Second Degree and Criminal Contempt in the First Degree for his conduct on February 23, 2017.

---

record, the Court has come across record evidence controverting this factual assertion.  (Dkt. No. 117, Attach. 2, at 21, 50, 56 [Pl.'s Dep.]; Dkt. No. 122, Attach. 3, at 62, 66 [Pl.'s 50-h Exam.].)  For this reason, the Court has omitted this factual assertion from the above statement of undisputed material facts.

45.    Plaintiff was further charged in two additional cases involving S.V. with Aggravated Harassment in the First Degree, Criminal Contempt in the First Degree, and Criminal Contempt in the Second Degree.

## Plaintiff's Arrival at Onondaga County Justice Center

46.    At the Justice Center, Plaintiff was met by Onondaga County Custody Department Sergeant Jeffrey Wick.

47.    At that time, Sergeant Wick was "familiar" with Plaintiff due to his numerous incarcerations at the Justice Center, and Sergeant Wick estimated that he has interacted with or seen Plaintiff at the Justice Center on 10 to 15 separate occasions.

48.    Sergeant Wick was aware that Sheriff's Office personnel have had to use force in gaining Plaintiff's compliance on multiple occasions.

49.    Plaintiff reported to Sergeant Wick that SPD officers had made unwanted sexual contact with him.

50.    At some point within the months or weeks prior to February 24, 2017, Plaintiff made an unfounded complaint alleging what he perceived to be to be sexual misconduct on the part of Sheriff's Office personnel.

51.    In Sergeant Wick's experience, when an inmate arrives at the Justice Center claiming to have been subjected to unwanted sexual contact, a common practice is to arrange for a medical evaluation or "rape kit" at a medical center in Syracuse.

52.    Accordingly, in light of Plaintiff's previous unfounded complaint alleging what he perceived to be sexual misconduct on the part of Sheriff's Office personnel, Sergeant Wick believed it particularly appropriate to provide Plaintiff with an opportunity to have a "rape kit" performed at an offsite medical center.

53.     Sergeant Wick communicated to SPD officers that, before Plaintiff could be booked into the Justice Center, he would need to be taken to a medical center for evaluation.

**Plaintiff's Deposition Testimony**

54.     Plaintiff does not know what Defendants Harkness and Harriman look like and cannot tell the difference between the two.

55.     Plaintiff cannot recall expressing any verbal objection to Defendants searching him in the back of the prisoner transport van.

56.     Plaintiff cannot recall whether Defendants said anything to him while he was in the back of the prisoner transport van.

57.     Plaintiff was "turned facing the wall" away from Defendants at the time of the search.

58.     Plaintiff could not see Defendants during the search.

59.     Plaintiff does not know "which officer really pulled my pants down and did what he did."

60.     At no time did Defendants or any officer "penetrate" Plaintiff.

61.     Plaintiff admitted that his repeated use of the term "rectum" to describe the area allegedly touched by one of the Defendants was "probably" a "mistake," and affirmed that he was referring to the area "outside" of his rectum (that is, his "sphincter" and/or "an[us]").[8]

62.     When Plaintiff arrived at the Justice Center, he refused to get out of the back of the transport van.

---

[8]     The Court has added the ten words at the end of the above-stated fact, because, when fairly read, Plaintiff's deposition states that the "mistake" he previously made (in repeatedly asserting that Defendants touched his rectum) was that it was his "rectum" that Defendants touched, not that there was a touching by Defendants of the area outside his rectum.  (Dkt. No. 117, Attach. 2, at 54-55.)

63.     The SPD officers transporting Plaintiff asked him if he was going to get out of the van "with any problems," but he did not respond.

64.     The SPD officers then stated that "they were going to have to get the SERT team of the Justice Center."

65.     Thereafter, Sergeant Wick came to the back of the van, opened the doors, and asked Plaintiff what the problem was.

66.     Plaintiff knew Sergeant Wick, having seen him "plenty of times" from previous incarcerations at the Justice Center.

67.     After Plaintiff explained what had happened, Sergeant Wick told the officers he would not accept Plaintiff at the Justice Center "until he gets checked out by a hospital."

68.     Plaintiff did not make any request to go to the hospital.

69.     Plaintiff was transported to St. Joseph's Hospital in Syracuse, where he had a "rape kit" examination performed.

70.     According to Plaintiff, the "rape kit" examination consisted of a nurse removing his boxer briefs, putting them into an evidence bag, and swabbing his buttocks with a small cotton swab.

71.     Plaintiff does not know what the nurse did with the kit after that.

72.     Plaintiff has never been told the results of the "rape kit."

73.     Plaintiff declined to release the "rape kit" to SPD.

74.     Plaintiff cannot recall whether he told the nurse who performed the "rape kit" about what happened to him.

75.     Plaintiff does not remember the names of any of the medical personnel he saw at St. Joseph's Hospital.

76.     Plaintiff was not prescribed any medications at St. Joseph's Hospital.

77.     Plaintiff has never seen or reviewed his medical records from St. Joseph's Hospital from that day.

78.     Plaintiff has never received a mental health diagnosis in connection with his arrest on February 24, 2017.

79.     Plaintiff has participated in anger management treatment in the past.

80.     Plaintiff contacted Vera House in Syracuse in connection with his allegations against Defendant.

81.     Plaintiff ultimately complained to Vera House about what he perceived to be gender discrimination because they did not want to help him.

82.     Plaintiff acknowledged in his interrogatory answers that he was in violation of an order of protection related to S.V. on February 24, 2017.

83.     Plaintiff ultimately pled guilty to Criminal Contempt in the First Degree for his actions on February 23 and February 24, 2017.

### C.     Parties' Briefing on Defendants' Motion for Summary Judgment

### 1.     Defendants' Memorandum of Law

Generally, in their motion, Defendants make three arguments.  (Dkt. No. 117, Attach. 15, at 8-20 [Defs.' Mem. of Law].)  First, Defendants argue that Plaintiff's excessive force claim pursuant to the Fourth Amendment should be dismissed.  (*Id.* at 8-16.)[9]  More specifically, Defendants argue that the force used (i.e., the nature of the search in the prisoner transport van) was justified by (a) the severity of the crime at issue, which involved not only violence and/or threatened violence (including reports that Plaintiff had a firearm), but also Plaintiff's actions in

---

[9]     Page citations in this Decision and Order refer to the page numbers used in the Court's Case Management / Electronic Filing ("CM/ECF") System, not to the page numbers contained in the parties' motion papers.

resisting arrest, (b) the fact that Plaintiff's own resistance prevented them from adequately searching him before the prisoner transport van arrived and that Plaintiff continued to resist in the transport van, and (c) the fact that Plaintiff repeatedly pressed his body against the wall of the van and reached toward his waistband, a place where it is common for individuals to carry or conceal weapons, and thus Defendants had reason to believe he might be hiding a weapon there. (*Id.*) Defendants argue that the search extended to "the interior of [Plaintiff's] pants and his pockets," and "along the waistband of Plaintiff's underwear" or "boxer briefs," but not into the interior of those boxer briefs. (*Id.* at 14. ["At all times, Officer Harriman's hand remained on the exterior surface of Plaintiff's boxer briefs."].) Finally, Defendants argue that Plaintiff has conceded that there was no contact with his "rectum" or any kind of penetration of his body, and he has not provided evidence of any physical or mental injuries resulting from Defendants' alleged excessive force. (*Id.* at 14-15.)

Second, Defendants argue that any remaining claims predicated upon a theory of failure to intervene in order to stop or prevent excessive force must be dismissed because there can be no such claim where, as here, the plaintiff has failed to establish a substantive excessive force claim, and, notwithstanding, Plaintiff has failed to identify any steps that either Defendant failed to reasonably take to protect him. (*Id.* at 17-18.)

Third, Defendants argue that, in the event that Plaintiff has established any constitutional violation, they are entitled to qualified immunity because reasonably competent officials could disagree as to whether Defendants' actions were appropriate under the circumstances. (*Id.* at 19-20.)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in his response to Defendants' motion, Plaintiff makes two arguments. (Dkt. No. 122, Attach. 19, at 6-9 [Defs.' Opp'n Mem. of Law].) First, Plaintiff argues that his excessive force and failure-to-intervene claims should not be dismissed because there is admissible record evidence that, by stripping Plaintiff down to his underwear in the van, Defendants violated the SPD's own explicit use-of-force policy (for example, the Defendants' police reports, in which they admit stripping Plaintiff to his underwear). (*Id.* at 6-7.)

Second, Plaintiff argues that Defendants are not entitled to qualified immunity because (a) the question of whether a defendant is entitled to qualified immunity should be resolved before the completion of discovery and before the filing of motions for summary judgment, and (b) their conduct was objectively unreasonable and unlawful based on the evidence, the fact that a thorough search of Plaintiff had already been conducted, and the fact that there is no proof that Plaintiff had a weapon on his person. (*Id.* at 7-9.)

### 3.     Defendants' Reply Memorandum of Law

Generally, in their reply memorandum, Defendants make three arguments. (Dkt. No. 123, Attach. 1, at 3-11 [Defs.' Reply Mem. of Law].) First, Defendants argue that their motion should be granted because Plaintiff has failed to respond to Defendants' Statement of Material Facts as required by the Local Rules of this Court in that he has failed to provide a matching numbered response to each of the factual assertions in Defendants' Statement of Material Facts, and has failed to provide record citations for many of the factual assertions he makes in the statement he does provide. (*Id.* at 3-6.)

Second, Defendants argue that Plaintiff has abandoned his excessive force and failure-to-protect claims because he has failed to address Defendants' substantive arguments as to those claims. (*Id.* at 7-10.) Defendants argue that, rather than addressing the substance of those

claims, Plaintiff has merely argued that Defendants are liable because the Citizen Review Board found they violated municipal policy.  (*Id.*)  Defendants argue that such finding does not actually compel a finding of a constitutional violation.  (*Id.*)  Finally, Defendants argue that Plaintiff's argument that the issue of qualified immunity must be raised before the completion of discovery has no basis under the law.  (*Id.*)

Third, Defendants argue that Plaintiff should not be permitted to assert new claims in opposition to Defendants' motion, namely his new claim that Defendants' alleged violation of municipal policy was the product of a failure-to-train that amounts to a constitutional violation. (*Id.* at 10-11.)  Defendants explain that, notwithstanding the fact that this claim is improperly being asserted for the first time in Plaintiff's response memorandum of law, Plaintiff has not named the City of Syracuse as a party in his Amended Complaint, and therefore this failure-to-train argument is inapplicable and misplaced.  (*Id.*)

## II.   LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[10]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

---

[10]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).[11]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[255] (This is because the Court extends special solicitude to the *pro se* litigant by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.).[12] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigant must obey a district court's procedural rules.[13]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that

---

[11]   Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[12]   *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[13]   *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

19

the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1 by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[14]–even where the non-movant was proceeding *pro se*.[15]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[16]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See*

---

[14]    Among other things, Local Rule 56.1(b) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 56.1(b).

[15]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases).

[16]    *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.   ANALYSIS

After careful consideration of whether Defendants are entitled to summary judgment, the Court must answer this question in the negative for the following reasons.

### A.   Substantive Constitutional Violation

As an initial matter, the Court observes that, although Plaintiff is asserting a claim of "excessive force," he appears to have limited it to only Defendants Harkness and Harriman's alleged contact during the search in the SPD prisoner transport van.  (Dkt. No. 8 [Pl.'s Am. Compl.].)  Notably, there is evidence of some amount of physical struggle between officers and Plaintiff during his arrest before he was placed in the van (the precise nature of which is disputed by the parties); however, Plaintiff does not mention this physical struggle in his Amended Complaint nor does he assert that any force used by the officers during that struggle was excessive or unlawful.  As a result, to the extent that the parties dispute the facts related to the struggle before Plaintiff was placed in the SPD prisoner transport van, the Court finds that such a dispute would not warrant the denial of Defendants' motion for summary judgment.[17]  Because of the allegations in the Complaint, the Court constrains its analysis to the actions inside the prisoner transport van.

---

[17]      Of course, an exception to this finding is the extent to which the struggle outside the van is relevant to whether the scope of the search inside the van was necessary.

Additionally, the Court observes that Plaintiff's argument that Defendants committed a constitutional violation because they (in Plaintiff's estimation) violated the SPD's use-of-force policy is unavailing for three reasons.  First, to the extent that Plaintiff's argument supports a theory of municipal liability, Plaintiff did not previously assert any claim for municipal liability in his Amended Complaint and cannot do so at this late stage of the proceedings, in response to Defendants' motion for summary judgment.  As Defendants argue, the existence of a municipal policy or a municipality's failure to properly train its employees are considerations when a plaintiff attempts to hold a municipality responsible for the actions of its employees.  However, Plaintiff has not named the City of Syracuse as a defendant, but rather has named only the individual two officers he alleges were involved.[18]  Second, even construing Plaintiff's argument as asserting that a violation of the use-of-force policy constitutes proof of excessive force, the violation of such a municipal policy does not, by itself, show such a constitutional violation.  *See Rizk v. City of New York*, 462 F. Supp. 3d 203, 220 (E.D.N.Y. 2020) (noting that a violation of a departmental policy "does not, in and of itself, amount to a violation of a right protected by the Constitution or federal law").  Third, the only "evidence" that Plaintiff adduces that there has been a violation of the SPD's use-of-force policy (other than his own testimony) is the Citizen Review Board's Findings and Recommendations, which (as argued by Defendant) do not actually compel a finding of a constitutional violation.

As to Plaintiff's substantive constitutional claim, the Court begins its analysis by observing that, although Plaintiff has articulated his claim as one for "excessive force" in his Amended Complaint, the factual allegations supporting that claim do not regard a use of force, but rather are more appropriately characterized as supporting a claim for an unreasonable search.

---

[18]     Plaintiff did initially name SPD as a Defendant, but SPD was terminated from this action as a result of previous proceedings in this litigation.  (Dkt. No. 5 [Decision and Order filed July 14, 2017].)

Furthermore, this apparent mischaracterization of his claim appears to have been caused by the fact that, although Plaintiff became represented by counsel in January 2020, his Amended Complaint was filed in August 2017, while he was proceeding *pro se*.  (Dkt. Nos. 8, 85.) Because Plaintiff's characterization of his claims were therefore made when he was proceeding *pro se*, the Court is required to construe his Amended Complaint as raising the strongest argument that it suggests.  *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (noting that "[t]he policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training").  As a result, because Plaintiff's own factual allegations plausibly suggest that the appropriate basis for Plaintiff's claim is an unreasonable search rather than excessive force, the Court will assess Plaintiff's claim under the standard for unreasonable search and seizure.  The Court notes that both search/seizure and excessive force claims arise under the Fourth Amendment, and both are subject to the Fourth Amendment's reasonableness standard.  *See Terranova v. New York*, 676 F.3d 305, 308 (2d Cir. 2012) (noting that excessive force claims, like unlawful search claims, are "judged under the Fourth Amendment's objective reasonableness standard"); *Hudson v. New York City*, 271 F.3d 62, 68 (2d Cir. 2001) (noting that the objective reasonableness standard has been "extended from searches to other types of Fourth Amendment violations, like excessive force"); *Falls v. (Police Officer) Detective Michael Pitt,* 16-CV-8863, 2021 WL 1164185, at *16 (S.D.N.Y. Mar. 26, 2021) (finding that the portion of plaintiff's "excessive force" claim that involved allegations that defendants emptied his pockets, checked his waistline, and reached down into his pants from

his underwear to his socks was "more properly analyzed as an unreasonable search claim, rather

than a claim based on alleged excessive force").[19]

"The overriding function of the Fourth Amendment is to protect personal privacy and

dignity against unwarranted intrusion by the State," and "[t]he ultimate touchstone of the Fourth

Amendment is 'reasonableness.'" *Schmerber v. California*, 384 U.S. 757, 767 (1996); *Brigham*

*City v. Stuart*, 547 U.S. 398, 403 (2006). "Determining whether a search is reasonable requires

balancing 'the need for the particular search against the invasion of personal rights that the

search entails. Courts must consider the scope of the particular intrusion, the manner in which it

is conducted, the justification for initiating it, and the place in which it is conducted.'" *Towns v.*

*Stannard*, 431 F. Supp. 3d 44, 64 (N.D.N.Y. 2019) (Sannes, J.) (quoting *Bell v. Wolfish*, 441

U.S. 520, 559 [1979]). Whether a search or seizure is reasonable is an objective inquiry; "an

officer's subjective intent is irrelevant under this standard," and reasonableness must be assessed

---

[19]     The Court finds that this liberal construction of Plaintiff's claim does not prejudice
Defendants with regard to their motion, because, even if the Court were to assess Plaintiff's
claim as an excessive force claim, summary judgment would not be warranted. In assessing
whether force is excessive under the Fourth Amendment reasonableness standard, the Court
would consider "the facts and circumstances of each particular case, especially (1) the severity of
the crime at issue, (2) whether the arrestee poses an immediate threat to the officer or passerby,
and (3) whether the arrestee is actively resisting arrest or attempting to evade arrest by flight."
*Lee v. City of Troy*, 19-CV-0473, 2021 WL 567240, at *9 (N.D.N.Y. Feb. 16, 2021) (Hurd, J.)
(internal quotation marks omitted). However, "the use of entirely gratuitous force is
unreasonable and therefore excessive." *Lee*, 2021 WL 567240, at *9 (quoting *Tracy v.*
*Freshwater*, 623 F.3d 90, 99 n.5 [2d Cir. 2010]). Here, the Court finds that the above-described
factors generally weigh in favor of a finding of reasonableness given the admissible evidence
that (a) Plaintiff was being arrested for violating an order of protection and making threats of
violence, (b) officers were aware of reports that Plaintiff was making threats of violence and that
he possessed a firearm, and (c) Plaintiff engaged in physically combative behavior both when he
was being arrested and when Defendants attempted to search him. However, because the parties
dispute the exact nature of the circumstances surrounding the alleged "use of force" (i.e., that
one of the Defendants pulled down Plaintiff's boxer shorts and swiped a bare hand against his
anus), and because a reasonable factfinder could conclude that the version of the facts alleged by
Plaintiff, if accepted, involved entirely gratuitous "force" in relation to Defendants' need to
conduct a protective search for a firearm incident to arrest, the Court would find summary
judgment would not be appropriate.

"'without regard to the underlying intent or motivation of the officers involved.'" *Hudson*, 271 F.3d at 68 (quoting *Scott v. United States*, 436 U.S. 128, 137-39 [1978]); *see Graham v. Connor*, 490 U.S. 386, 397 (1989) ("As in other Fourth Amendment contexts . . . the reasonableness inquiry . . . is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation").

Additionally, "the Fourth Amendment generally proscribes unreasonable intrusions on one's bodily integrity, and other harassing and abusive behavior that rises to the level of unreasonable seizure." *Falls*, 2021 WL 1164185, at *29 (finding that claims for "sexual harassment" and "sexual abuse" to be duplicative of a claim for an unreasonable search). "'Unreasonable, non-consensual, inappropriate touching,' for example, 'can constitute unreasonable intrusions into a plaintiff's bodily integrity in violation of the Fourth Amendment.'" *Falls*, 2021 WL 1164185, at *16; *accord, Brown v. City of Utica*, 17-CV-1190, 2020 WL 1046022, at *6 (N.D.N.Y. Mar. 4, 2020) (Sannes, J.).

Here, there is a genuine dispute of material fact as to what occurred during the search. Defendants have presented admissible evidence to support their argument that they lowered Plaintiff's jeans in order to search inside his pants for a firearm and that they felt around the waistband of his boxer shorts, but that they at no time removed his boxer shorts or made contact with his anus. Plaintiff, on the other hand, has presented admissible evidence to support his argument that Defendants removed his boxer shorts and swiped a bare hand between his buttocks, resulting in a touch of his anus.[20]

---

[20]     The Court notes that, although Plaintiff's Amended Complaint bases this claim on an allegation that "barehanded" contact was made with his "rectum" (and not his "anus"), it also bases this claim on an allegation that such contact was made "between [Plaintiff's] buttocks." (Dkt. No. 8, at 4.) Because (as previously stated) the factual allegations of a *pro se* pleading

In general, courts in this circuit have been reluctant to grant summary judgment where there is a genuine dispute of material fact as to whether a defendant officer reached into an arrestee's clothes (as opposed to conducting an over-the-clothes pat-down search) during a search incident to arrest and made under-the-clothes or skin-to-skin contact with a private area. *See Falls,* 2021 WL 1164185, at *16 (finding a triable issue of fact about the reasonableness of a search incident to arrest where it was alleged that defendants reached into his clothing as opposed to conducting a pat-down over his clothing) (collecting cases); *Thomas v. City of New York*, 17-CV-8593, 2020 WL 6712306, at *7 (S.D.N.Y. Nov. 16, 2020) (stating that a claim involving skin-to-skin touching of the plaintiff's genitals would be actionable as a unreasonable search); *Brown*, 2020 WL 1046022, at *6 (denying summary judgment due to genuine dispute of material fact as to whether defendant had more than a "brief contact with [plaintiff's] private area"); *Anderson v. Waterbury Police Dep't*, 14-CV-0829, 2017 WL 1157843, at *11 (D. Conn. Mar. 28, 2017) (denying summary judgment due to issue of fact as to whether search was unreasonable where the parties disagreed about whether defendant officer's action of swiping his hand between plaintiff's butt cheeks under his underwear during the search constituted a sexual assault or a reasonable search); *Thomas v. O'Brien*, 08-CV-0318, 2010 WL 3155817, at *9 (N.D.N.Y. Aug. 9, 2010) (Mordue, C.J.) (denying motion for summary judgment because there was a dispute as to whether Defendant had shoved his gloved hand into plaintiff's pants, groped and squeezed his scrotum, and rammed his fingers between plaintiff's buttocks and scratched his anus roughly).

---

should be liberally construed to raise the strongest claim they suggest, the Court finds that Plaintiff's Amended Complaint asserts a claim arising from the unnecessary skin-on-skin contact with his anus, rather than his rectum.

Although, as discussed above in note 19 of this Decision and Order, the undisputed facts

establish that Defendants had a reasonable basis for searching Plaintiff for a weapon based on (a)

the fact of his arrest for violating an order of protection as to S.V., (b) the facts known to

Defendants at the time of the search, including reports that Plaintiff had a firearm and had

threatened violence against not only S.V. and her children, but also police officers, and (c)

Plaintiff's conduct in resisting arrest to some extent, it is not clear that a search such as Plaintiff

recounts would be reasonable.  In particular, it is not clear that it would have been objectively

reasonable for Defendants to conduct what was essentially a strip search with physical contact

with Plaintiff's anus in order to ensure that Plaintiff did not have a firearm or another weapon

hidden on his person for the purposes of the search incident to arrest.  Even if Defendants had an

individualized reasonable suspicion[21] that Plaintiff might be hiding a firearm or other weapon

based on the information provided to SPD, it is not established that conducting such a search

would have been reasonable under the circumstances, particularly given that weapons like a

firearm tend to be much larger than items such as drugs and other contraband and thus much

more likely to be discoverable from a thorough over-the-clothes pat-frisk.  Although the search

was conducted inside of the police van, the doors of the van were open[22] and conducting such a

---

[21]    The Second Circuit has held that the requirement that there be reasonable suspicion to
conduct a visual body cavity search applies to situations where the individual searched has been
arrested for either a misdemeanor or a felony offense.  *See Sloley v. VanBramer*, 945 F.3d 30, 38
(2d Cir. 2019).  Although the search alleged by Plaintiff does not fit squarely with the definitions
of either a strip search or a visual body cavity search (given that the search involved physical
contact but did not involve any looking or probing into a cavity), the Court sees no reason why
the same requirement would not apply to the conduct here.  *See Monroe v. Gould*, 372 F. Supp.
3d 197, 204 (S.D.N.Y. 2019) (applying the reasonable suspicion standard to a manual body
cavity search involving spreading the plaintiff's buttocks and penetrating plaintiff's rectum with
a finger for a misdemeanor arrestee).

[22]    Defendant Harriman swore in his affidavit that, at the time of the search, Plaintiff was "at
the front wall away from the rear doors" and both he and Defendant Harkness were "standing
between [Plaintiff] and the doors," such that "it would have been extremely difficult for any
bystander on the street to see him."  (Dkt. No. 117, Attach. 10, at ¶ 16 [Harriman Aff.].)

search more or less in a public place (i.e., in a vehicle on a public street) is a far cry from the typical situation where such searches are conducted in a holding facility or police station. *See Illinois v. Lafayette*, 462 U.S. 640, 645 (1983) (noting that "the factors justifying a search of the person and personal effects of an arrestee upon reaching a police station but prior to being placed in confinement are somewhat different from the factors justifying an immediate search at the time and place of arrest," and that "[p]olice conduct that would be impractical or unreasonable—or embarrassingly intrusive—on the street can more readily—and privately—be performed at the station"); *Towns*, 431 F. Supp. 3d at 64-65 (noting that "[a] strip search in a public place, even if justified by reasonable suspicion, has been uniformly subject to close scrutiny, and has generally required a clear showing of exigent circumstances to justify such an extreme invasion of privacy") (citing cases); *Thomas*, 2010 WL 3155817, at *9 (noting that the fact that the alleged search inside plaintiff's pants occurred on the front porch of a residence was a factor to consider when assessing whether the search itself was reasonable). As a result, in addition to the genuine dispute of material fact about whether such an invasive search occurred, there is also a genuine dispute of material fact as to whether that search would have been reasonable in terms of the location where it occurred that is more appropriately left for a jury to decide.

Because there is a genuine dispute of material fact as to the nature of the search that occurred (i.e., whether Defendants took down Plaintiff's boxer shorts and swiped a bare hand between his buttocks, touching his anus), and because a reasonable factfinder accepting Plaintiff's evidence about this conduct could find that Defendants' search was unreasonable, summary judgment is inappropriate.

### B.      Claim of Failure to Intervene

In addition to the substantive claim, Plaintiff also asserts that Defendants failed to protect him from constitutional violations and/or to intervene to stop or prevent the commission of such violations.  "It is widely recognized that law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official."  *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

"To establish such a claim of failure to intervene, a plaintiff must prove the following four elements: (1) that a constitutional violation was being committed against the plaintiff; (2) that the officer knew, or deliberately ignored, the fact that the constitutional violation was going to be, or was being, committed; (3) that the defendant had a reasonable opportunity to intervene and prevent the harm; and (4) that the defendant did not take reasonable steps to intervene." *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 296 (N.D.N.Y. 2018) (citing *Curley v. Vill. Of Suffern*, 268 F.3d 65, 72 [2d Cir. 2001]; *Anderson*, 17 F.3d at 557).

Here, Plaintiff appears to assert a failure-to-intervene claim against whichever of the two Defendants did not perform the alleged improper search.  Granted, regardless of which Defendant was involved in the failure-to-intervene, the available evidence indicates that the allegedly improper search itself took between "only a few seconds" and as long as 20 seconds. (*Compare* Dkt. No. 117, Attach. 10, at ¶ 17 [Harriman Decl.] *with* Dkt. No. 122, Attach. 3, at 63-65 [Pl.'s 50-h Exam., testifying that the swipe of his anus took "I'd say what, 20 seconds,"

although repeatedly indicating that he did not actually know how long the search took].)
However, the Court finds that even this short period of time could permit a reasonable factfinder
to conclude that the relevant Defendant had a reasonable opportunity to intervene.

 The Court renders this finding given the close proximity of both Defendants at the time
of the search (both to each other and to Plaintiff), and the fact that it is reasonable to believe that
the Defendant who was not conducting the search would have been paying attention to the
actions of the other Defendant and would have reasonably been able, through words and/or
action, to intervene. *See Figueroa v. Mazza*, 825 F.3d 89, 108 (2d Cir. 2016) (finding that
failure-to-intervene claims were for the jury to decide despite the fact that the assault in question
lasted less than 20 seconds based on the close proximity of the defendant officers to the plaintiff
at the time of the alleged assault in the back of a police cruiser); *Stroman v. Ranze*, 18-CV-0149,
2019 WL 7494384, at *7-8 (N.D.N.Y. Dec. 13, 2019) (Dancks, M.J.) (noting that, although
"officers generally 'cannot be held liable for failure to intervene in incidents that happen in a
matter of seconds,'" the issue of whether an officer had a reasonable opportunity to intervene
"can be decided as a matter of law only if 'considering all the evidence, a reasonable jury could
not possibly conclude' that the officer had a reasonable opportunity to intervene") report-
recommendation adopted by 2020 WL 68610 (N.D.N.Y. Jan. 7, 2020) (Sharpe, J.); *Dollard v.
City of New York*, 408 F. Supp. 3d 231, 236 (E.D.N.Y. 2019) (finding summary judgment to be
inappropriate where a reasonable juror could find that an officer had a realistic opportunity to
intervene to stop at least some of the alleged conduct in a physical encounter that lasted for
approximately nine seconds).

 For all of these reasons, the Court finds that summary judgment is inappropriate on
Plaintiff's failure-to-intervene claim.

C.      Qualified Immunity

As an initial matter, the Court rejects Plaintiff's argument that Defendants cannot seek

the protection of qualified immunity because they were required to do so before discovery was

completed and before any motion for summary judgment was filed.  Plaintiff cites no legal

authority to support such a bright line rule, and his argument is at odds with a multitude of cases

from this Circuit in which qualified immunity was resolved either on a motion for summary

judgment or at trial.  The Supreme Court's indication that it has "repeatedly stressed the

importance of resolving immunity questions at the earliest possible stage in litigation" does not

support Plaintiff's argument because often questions of qualified immunity cannot be fully

considered without a fully developed factual record or resolution of factual disputes.  *See Hunter*

*v. Bryant*, 502 U.S. 224, 227 (1991) (considering without admonishment a qualified immunity

argument that was raised in a motion for summary judgment).  As a result, the Court finds

nothing improper in Defendants' request for a ruling on qualified immunity in conjunction with

their motion for summary judgment.

Although there has not yet been a finding on whether Defendants committed a

constitutional violation, the Court finds it appropriate to consider whether qualified immunity

would apply even if Defendants were found to have committed a constitutional violation.

"Qualified immunity shields government officials from civil damages liability unless the official

violated a statutory or constitutional right that was clearly established at the time of the

challenged conduct."  *Brown v. City of New York*, 862 F.3d 182, 190 (2d Cir. 2017) (citing

*Reichle v. Howards*, 566 U.S. 658, 664 [2012]).  In other words, "[a] police officer is entitled to

qualified immunity if (1) his conduct does not violate a clearly established constitutional right,

or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a

clearly established right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008).  When

determining whether the right at issue is clearly established such that "the contours of the right

are sufficiently clear that a reasonable official would understand that what he is doing violates

that right," a court should ask "(1) Was the law defined with reasonable clarity? (2) Had the

Supreme Court or the Second Circuit affirmed the rule? and (3) Would a reasonable defendant

have understood from the existing law that the conduct was unlawful?" *Gonzalez v. City of

Schenectady*, 728 F.3d 149, 158 (2d Cir. 2013) (quoting *Anderson v. Creighton*, 483 U.S. 635,

640 [1987]; *Young v. City of Fulton*, 160 F.3d 899, 903 [2d Cir. 1998]) (internal alterations and

quotation marks omitted).

 With regard to the second question, the Second Circuit has explained that, to determine

whether a right is clearly established, "we generally look to Supreme Court and Second Circuit

precedent existing at the time of the alleged violation." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir.

2015) (internal quotation marks omitted) (quoting *Okin v. Vill. of Cornwall-On-Hudson Police

Dep't*, 577 F.3d 415, 433 [2d Cir. 2009]).

 With regard to the first question, the Supreme Court has repeatedly admonished lower

courts "not to define clearly established law at a high level of generality."  *Ashcroft v. al-Kidd*,

563 U.S. 731, 742 (2011).  "This inquiry must be undertaken in light of the specific context of

the case, . . . [which] is especially important in the Fourth Amendment context, where . . . it is

sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to

the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal

quotation marks and citations omitted).  "[A] case directly on point" is not necessarily required,

"but existing precedent must have placed the statutory or constitutional question beyond debate."

*al–Kidd*, 563 U.S. at 741.  That is, there must be "a case where an officer acting under similar

circumstances . . . was held to have violated the Fourth Amendment," *White v. Pauly*, 137 S. Ct. 548, 552 (2017), such that the unlawfulness of the defendant officer's conduct would "follow immediately," *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 [1987]).

Here, the Court defines the right in question as the Fourth Amendment right against being subjected to an unreasonable search or intrusion on one's bodily integrity involving a strip search and/or physical contact with a private area during a search incident to arrest before transport to a police station or other facility. There certainly exist district court cases from before the date of the incident in question (i.e., February 24, 2017) recognizing some variation of this right.[23] The Second Circuit recently reiterated that "'the decisions of other federal lower courts, are relevant and often persuasive' authority on the 'clearly established' issue." *Sloley*, 945 F.3d at 42 (quoting *Charles W. v. Maul*, 214 F.3d 350, 357 [2d Cir. 2000]). As to authority from the Second Circuit, in the case of *Rivera v. United States*, 928 F.2d 592 (2d Cir. 1991), the Second Circuit found that it was error to dismiss claims on summary judgment because there

---

[23]     *See, e.g.*, *Santiago v. City of Yonkers*, 13-CV-1077, 2015 WL 6914799, at *6 (S.D.N.Y. Oct. 30, 2015) (finding that "[t]he [post-arrest] search of plaintiff raises two distinct Fourth Amendment questions," one that "bear[s] on plaintiff's rights to be free from sexual assault at the hands of a police officer during an arrest" and one that concerns the right "to be free from an unreasonable search"); *Wright v. City of Waterbury*, 07-CV-0306, 2011 WL 1106217, at *6 & n.9  (D. Conn. March 23, 2011) ("Sexual misconduct by a police officer during a 'seizure' is analyzed under the Fourth Amendment. Wright does not contest that the alleged sexual assault occurred while he was under arrest. Accordingly, the Fourth Amendment reasonableness standard applies rather than the Fourteenth Amendment substantive due process inquiry."); *Thomas*, 2010 WL 3155817, at *9 (denying motion for summary judgment because there was a dispute as to whether, during a search incident to arrest on a front porch, Defendant had shoved his gloved hand into plaintiff's pants, groped and squeezed his scrotum, and rammed his fingers between plaintiff's buttocks and scratched his anus roughly); *cf. Love v. Town of Granby*, 03-CV-1960, 2004 WL 1683159, at *4-6 (D. Conn. July 12, 2004) (recommending the denial of defendants' motion for summary judgment on the plaintiff's Fourth Amendment unreasonable search and sexual assault claim based on the plaintiff's allegations that during pre-arrest pat search one officer grabbed his scrotum, swore at him and "called him a faggot"), adopted, Order (D. Conn. filed July 28, 2004).

were substantial questions of fact as to whether a strip search of pre-transport arrestees was reasonable where, among other things, there were questions as to whether a pat-down search would have sufficed to reveal any weapons. *Rivera*, 928 F.2d at 607. Additionally, the Supreme Court has noted that "the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street." *Illinois*, 462 U.S. at 645. Without further briefing from the parties, the Court finds that the right in question was sufficiently clearly established to justify the denial of Defendants' request for a grant of qualified immunity for the purposes of this motion for summary judgment.[24]

Moreover, there appears to be a genuine dispute between the parties as to whether it would be clear to a reasonable officer that his conduct was unlawful in the situation that Defendants allegedly confronted, especially given the admissible record evidence that the alleged offensive conduct in question lasted 20 seconds. (Dkt. No. 122, Attach. 3, at 63-65 [Pl.'s 50-h Exam.].) Because genuine disputes of fact remain that directly bear on the issue of whether it would have been objectively reasonable for Defendants to believe their alleged conduct was lawful (and whether the alleged conduct occurred at all), the Court finds it inappropriate to render a judgment for Defendants as a matter of law on the issue of qualified immunity at this time. *See Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) ("Where circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity."); *Martineau v. Newell*, 17-CV-0983, 2019 WL 7606069, at *8 (N.D.N.Y. Oct. 15, 2019) (Lovric, M.J.) (finding that "[t]he existence of factual disputes precludes a finding on qualified immunity because 'the reasonableness of a police officer's

---

[24]    Defendants will of course be permitted to renew their request for a grant of qualified immunity at trial should they be found to be liable on any of Plaintiff's claims.

conduct is at issue in both a . . . [Fourth Amendment]  analysis as well as step two of the

qualified immunity test") (internal alterations omitted) report-recommendation adopted by 2019

WL 5883686 (N.D.N.Y. Nov. 12, 2019) (Kahn, J.).

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 117) is **DENIED**;

and it is further

**ORDERED** that the Plaintiff is directed to forward a written settlement demand to

defendants no later than **October 1, 2021,** and the parties are directed to thereafter engage in

meaningful settlement negotiations. The parties are directed to jointly file, on or **October 22,**

**2021**, regarding their settlement discussions and if a settlement conference would be beneficial

or a jury trial date should be scheduled.

Dated: September 21, 2021
      Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge